## Gallagher Estate

*John H. Bigelow, John L. Bigelow* and *Richard L. Bigelow, Jr.*, for petitioner.

*William F. Farrell* and *Edward Darling*, for respondent.

HOURIGAN, P. J., November 15, 1948.—The last will and testament of D. T. Gallagher, late of the City of Hazleton, was probated on September 13, 1913, reading as follows:

"In the name of God Amen:

"I, D. T. Gallagher of Hazleton City, County of Luzerne, State of Pennsylvania, being now of sound

mind and body do now make my Will I hereby bequeath to my wife Mary Gallagher all my Money and Estate while she lives, to Rev. Father D. J. Kane for Masses One hundred Dollars $100) out of my Estate $12 is to be paid for Masses every year, 2 Masses for my mother and 2 for my father, remaining 8 Masses for myself. The same amount every year for my Wife and her parents after her death. When my Son Frank looses his interest in the business, he is to be paid $15 and board every month after Mothers death to receive forty dollars ($40) per month from Estate Frank and Mary are to be given care of Estate after my Wifes death, should Frank marry he is to receive equal share with other children.

"Immediately after my death all of my Debts are to be paid two years 2 years after my death fifteen per cent of income from Estate to be used for repairing the same after my Wifes death 25 per cent to be used. The-note-for-six-hundred-dollars-$600-in-Bank-to-be-paid-as-soon-as-possible=and=placed=against=Mikes-property. There are 3 propertys to be bought and one given to each of my 3 sons, Daniel John and Joe if they fail to pay for it it is to go back into my Estate and if Mike fails to pay it is to go in my Real Estate theay are to pay 5 per cent interest on the money invested to be paid every six months, if any of my Sons die and there wifes fail to pay for the property it is to go into my Real Estate, after my wifes death i wish the house she. is living and all personal personal property to be given to my daughter Mary clear from other Estate with interest in Estate if she dies property to go into Estate and after Franks death $50 to be given for Masses at once Daniel is to be credited with as much as he has paid into my real estate two years after my Wifes death there is nothing to be taken out of my Estate except Franks income of $40 per Month and $20 per month to Mary my Daughter.

"Also money for Masses if she marries Twenty Dollars $20 is to be cut off.

"Property must not be sold unless sold at an advantage when Money received is to be used to purchase other real estate at an advantage of seven (7) per cent all of real estate must be handed down After my Wifes death The heirs are to meet once a year to investigate the condition of the Property.

"Should the cause arise theay are to help one another as much as possible, if my relations need help theay are to receive it.

"And i appoint my wife as my Executrix in this my Will. There is no Bond needed in this Will.

"his    x    own  mark

D. T. Gallagher.

"Syned and sealed this 23rd
day of May 1912 in presence of
following witnesses.
"Frank H. Gallagher
John H. Huth and
Michael Huth."

It is to be noted that the will was executed by mark. Who the scrivener was or the circumstances under which it was prepared does not appear.

On the same day, letters testamentary were issued to his widow, Mary Gallagher. Her application for letters was signed by her mark, which leads us to conclude that both were illiterate. From that time until the present, nothing has been done toward settling the estate. No inventory was filed. No accounting was had or asked for.

D. T. Gallagher died on September 5, 1913. Mary Gallagher, his widow and executrix of his estate, died on December 25, 1924. From that time until the present, no subsequent letters have been taken out on the estate of D. T. Gallagher, deceased. There has been

no administration of his widow's estate, if she had any at the time of her death.

He died seised of eight pieces of real estate, each of them improved with a double frame house. He left surviving him his widow, a daughter, Mary, and five sons, to wit: Daniel T. Gallagher, Joseph B. Gallagher, John A. Gallagher, Michael A. Gallagher and Francis T. Gallagher, in whom his real estate vested, as we shall later find, after the life estate given to his widow, Mary, with the exception of one parcel specifically devised to his daughter, Mary.

Before the court is the petition of Michael J. Hanley, husband of decedent's daughter, Mary A. Gallagher, deceased, for a citation to show cause why an inquest in partition should not be awarded to partition all real estate of which decedent died seised except the lot devised to Mary.

Respondents are surviving children and grand-children of Daniel T. Gallagher deceased. Respondents, Joseph B. Gallagher, a son of decedent, and John B. Gallagher, Margaret Mary Gallagher, Kathleen Gallagher and Peter Gallagher, children of John A. Gallagher, deceased, a son of D. T. Gallagher, have filed answers averring: (1) That all real estate of D. T. Gallagher, deceased, in which respondents have an interest, is not included in the petition, averring that the devise to Mary did not vest a fee simple title in her and that it should have been included in the petition; (2) that all real estate vested in them through the estate of decedent, is not included in the petition, averring that on April 19, 1923, 25 years ago, Mary A. Gallagher, widow of D. T. Gallagher and executrix of his estate, used $9,000 of the estate's funds to purchase real estate, title to which was taken in her name, further averring that on July 15, 1924, 24 years ago, without consideration, she transferred this real estate to her daughter, Mary Gallagher Hanley and her hus-

band, Michael J. Hanley. Under these facts they aver that the widow, Mary, held the title as trustee for all the heirs of D. T. Gallagher, deceased, and that when she transferred it to her daughter and son-in-law without consideration, the title remains in trust for all the heirs and therefore should be included in this partition proceeding. These averments were denied by petitioner in his reply to respondents' answer.

The first question to be determined is, what estate vested in Mary Gallagher Hanley by virtue of the following provision in decedent's will: ". . . After my wife's death I wish the house she is living and all personal property to be given to my daughter Mary clear from other estate with interest in estate if she dies property to go into estate"?

Mary Gallagher Hanley was decedent's only daughter. She lived with him and his wife. It is admitted by all the parties that decedent's wife took a legal life estate in all his property. She (the wife) was the first object of his bounty. His only daughter, who lived with and cared for his wife and himself was the second object of his bounty. He wanted her to have a house of her own after his wife's death and, by the provision above quoted, intended to and clearly did give her a fee simple title to the "house she is living (in)". "If she dies property to go into estate" means that if she should die before testator "the house she is living (in)" should become part of his estate. Both testator and his wife predeceased daughter Mary.

The next question is, what did "house" mean in that devise? Testator and his wife lived in a house erected on a lot 30 feet wide by 104 feet deep. It is the type of house commonly called a double house. This particular house was occupied on one side by testator and his family, and the other by a tenant. No testimony was offered to show the width or depth of the house. To be built upon a lot 30 feet by 104 feet, it could not have

been very wide. Regardless of the size, testator intended to and did give the house "she is living (in)" to his daughter. If he intended to give her only one side of the house, he would have said so. The house was given to the daughter without limitation. He never intended that the property be divided so that the daughter would have one half of a small double house upon a lot at most 15 feet wide by 104 feet deep.

The intention of testator is the "polar star" in all wills and when it is determined, it is conclusive.

The attempted disposition in the will of real estate other than that devised to Mary, is so vague, indefinite, confusing and unintelligible that we cannot make any sense of it and certainly cannot find any intention of a testamentary disposition of it.

Under these circumstances, we are forced to conclude he died intestate to all of his real estate except that devised to Mary at the termination of his wife's estate. No rules of construction or interpretation could lead us to any other conclusion.

The last question is, should the real estate alleged to have been purchased by the executrix in her individual name, with estate funds, 24 years before this proceeding was instituted and title to which real estate was subsequently conveyed by her without consideration to her daughter and son-in-law, be included in the petition for inquest?

Has the orphans' court power to partition lands other than those of which decedent died seised?

Decedent did not die seised or possessed of the real estate purchased by his wife, title to which she did not acquire until 12 years after his death and which has been in her possession and in the possession of third parties, as hereinbefore stated, for upwards of 24 years.

Section 1(a) of the Orphans Court Partition Act of June 24, 1939, P. L. 707, provides:

"That the orphans' court of each county of this Commonwealth shall have jurisdiction, . . . in the partition and valuation of real estate within the county of any decedent, testate or intestate, whether such decedent was at the time of his death seised or possessed of such real estate solely or as tenant in common or joint owner with any other person or persons."

In Stockdale's Estate, 29 Dist. R. 1013, at page 1020, Judge Hughes, afterwards Justice Hughes of the Supreme Court, said:

"Upon reference to the Orphans' Court Partition Act of 1917, (re-enacted by the Act of June 24th, 1939, P. L. 707) it will be observed that it is indeed a resume or codification of the earlier statutes. It is advisable to review this act in conjunction with the report of the Commission of 1917 appointed to codify and revise the law of decedents' estates. The footnotes to section 1 of this act on page 289 of the report clearly demonstrate that the act is built up out of the old statutes and concerns only real estate of which decedents die seised.

"Notice particularly the language of section 1 of this act, which provides: 'That the Orphans' Court of each county of this Commonwealth shall have jurisdiction . . . in the partition and valuation of real estate within the county of any decedent, testate or intestate, whether such decedent was at the time of his death seised or possessed of such real estate solely or as tenant in common or joint owner with any other person or persons,' etc.

"The very words of the enactment show that it applies only to the real estate of which the decedent died seised, and excludes from its purview and operation lands of which the decedent did not die seised. The language of the act is so clear that even a layman can understand the same, and no canons of construction

308

need be introduced to interpret its purposes or enactments."

## Decree

Now, November 15, 1948, citation awarded on June 16, 1948, directed to all parties in interest, to show cause why an inquest in partition should not be awarded, is made absolute and an inquest to make partition of the real estate of decedent among the parties in accordance with their respective interests is awarded. Service upon nonresidents may be made by registered mail. Returnable December 22, 1948, at 10 o'clock a.m.